IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHRISTOPHER A. M., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) | Case No. 21-cv-00417-SH |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff Christopher A. M. seeks judicial review of the decision of the Commissioner of Social Security (the "Commissioner") denying his claim for disability benefits under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. In accordance with 28 U.S.C. § 636(c), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court reverses and remands the Commissioner's decision denying benefits.

**I.    Disability Determination and Standard of Review**

Under the Act, an individual is disabled if he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment(s) must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Social Security regulations implement a five-step sequential process to evaluate disability claims. 20 C.F.R. § 416.920. To determine whether a claimant is disabled, the

Commissioner inquires into: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from severe medically determinable impairment(s); (3) whether the impairment meets or equals a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the claimant can still do his past relevant work; and (5) considering the RFC and other factors, whether the claimant can perform other work. *Id.* § 416.920(a)(4)(i)-(v). Generally, the claimant bears the burden of proof for the first four steps. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At the fifth step, the burden shifts to the Commissioner to provide evidence that other work the claimant can do exists in significant numbers in the national economy. 20 C.F.R. § 416.960(c)(2). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

Judicial review of the Commissioner's final decision is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The "threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a scintilla but means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met," *Grogan*, 399 F.3d at 1262, but it will neither reweigh the evidence nor substitute its judgment for that of the Commissioner, *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). Even if a court might have reached a different conclusion, the

Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.   Background and Procedural History

Plaintiff applied for Title XVI disability benefits with a protective filing date of September 30, 2019. (R. 15, 155-64.) In his application, Plaintiff alleged he has been unable to work since June 13, 2016, due to conditions including lower back problems, right hip problems, right knee problems, right arm and shoulder issues, depression, an inability to stand for a "long time," an inability to bend down without pain, walking with a limp, and an inability to "walk for long." (R. 155, 175.) Plaintiff was 39 years old at the time of the ALJ's decision. (R. 26, 155.) Plaintiff has less than a high school education[1] and past relevant work as a router operator and pipe threading machine operator. (R. 47, 176.)

Plaintiff's claim for benefits was denied initially and upon reconsideration. (R. 82-84, 91-95.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which the ALJ conducted on March 25, 2021. (R. 31-52, 96.) The ALJ then denied benefits and found Plaintiff not disabled. (R. 15-26.) The Appeals Council denied review on July 26, 2021 (R. 1-5), rendering the Commissioner's decision final, 20 C.F.R. § 416.1481. Plaintiff appeals.

---

[1] Plaintiff's disability report states that the highest grade of school he completed was "7th grade." (R. 176.) In her briefing, the Commissioner finds this to be improbable, given that the report also says this grade was completed in 2003 (the year Plaintiff turned 22). (ECF No. 13 at 9 n.5.) Indeed, there have been inconsistent findings regarding Plaintiff's educational level, with the initial determination referring to Plaintiff as a "38 year old male" while conversely finding him to be a "48 year old male with 12 years of education" (R. 57); the reconsideration determination finding Plaintiff to be a "39 year old male with 7 years education" (R. 73); and the ALJ finding Plaintiff to have "at least a high school education" (R. 25). However, the Commissioner has pointed to no evidence in the record indicating Plaintiff had anything other than a 7th grade education. As such, the Court will take Plaintiff at his word despite the anomalous "date completed."

### III. The ALJ's Decision

The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the application date. (R. 17.) At step two, the ALJ found Plaintiff to have the following severe impairments: (1) a right hip impairment; (2) a lumbar spine impairment; and (3) depression. (R. 17-18.) At step three, the ALJ found Plaintiff's impairments had not met or equaled a listed impairment. (R. 18-20.)

After considering certain evidence, the ALJ concluded that Plaintiff had the RFC to perform "sedentary work as defined in 20 CFR 416.967(a)" with the following mental[2] limitations: "The claimant can understand, remember, and carry out simple tasks. The claimant can tolerate superficial (brief and cursory) contact with coworkers and supervisors. Public contact should not be part of the job duties. The claimant can adapt to a work setting and changes in a work setting." (R. 20.) The ALJ then provided a recitation of the evidence that went into this finding. (R. 20-24.)

At step four, the ALJ found Plaintiff unable to perform his past relevant work as a router operator and pipe threading machine operator. (R. 25.) Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work that existed in significant numbers in the national economy, such as document preparer, touch-up screener, and semi-conductor bonder. (R. 25-26.) Accordingly, the ALJ concluded Plaintiff was not disabled. (R. 26.)

### IV. Issues

On appeal, Plaintiff asserts (1) the ALJ erred by failing to resolve an apparent conflict between the VE's testimony and the reasoning levels assigned by the Dictionary

---

[2] Plaintiff does not challenge the ALJ's treatment of his physical limitations. (*See generally* ECF No. 12.)

of Occupational Titles ("DOT") to the document preparer, touch-up screener, and semi-conductor bonder jobs (ECF No. 12 at 4-8); and (2) even if only the document preparer job is excluded due to such conflict, remand is necessary to determine whether the remaining jobs exist in significant numbers in the national economy (*id.* at 8-9). The Court finds that the ALJ erred in failing to resolve the apparent conflict in the document preparer job and that remand is therefore necessary. The Court will not reach Plaintiff's arguments regarding the reasoning level required for the remaining jobs.

## V.    Analysis

Once Plaintiff has met his burden of showing that he could not perform his past relevant work, the Commissioner had the burden "at step five to show that the claimant retains sufficient RFC to perform work in the national economy, given [his] age, education, and work experience." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005) (alteration omitted)). An ALJ may rely on the testimony of a VE to satisfy the step-five burden and identify jobs that a claimant can perform—so long as all the RFC limitations are reflected in the hypothetical question propounded to the VE. *See Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).[3]

Here, the ALJ posed a hypothetical question to the VE that matched the RFC set forth above, and the VE identified three sedentary, unskilled jobs a hypothetical person of Plaintiff's age, education, and work history could perform: document preparer, touch-up screener, and semi-conductor bonder. (R. 20, 47-50.) The VE testified there were 19,000 document preparer jobs, 12,000 touch-up screener jobs, and 15,000 semi-

---

[3] In *Qualls*, the court found that where the ALJ "propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment," "the VE's answer to that question provided a proper basis for the ALJ's disability decision." *Id.*

5

conductor bonder jobs in the national economy. (R. 49.) Based on this testimony, the ALJ concluded Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. 25-26.) The ALJ also determined that the VE's testimony was consistent with the information contained in the DOT. (R. 26.)

### A. Conflict Between the DOT and the VE's Testimony

While an ALJ can rely on the VE's testimony at step five, this reliance has its limits. An ALJ has a duty to develop the record, which includes questioning the VE about the source of her opinions and any deviations from publications like the DOT. *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). As such, "the ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Id.*; *see also* Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an apparent unresolved conflict between VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a . . . decision about whether the claimant is disabled.").

In this case, there is an apparent conflict between the VE's testimony and the DOT's assigned "reasoning level" for the document preparer job. The DOT appends a "definition trailer" to each job, which is comprised of a number of selected occupational characteristics, including the General Educational Development ("GED") Scale. *See* DOT, App. C, 1991 WL 688702 (4th ed. 1991). The GED Scale is divided into three subparts: Reasoning Development, Mathematical Development, and Language Development. *Id.* There are six levels for each GED Scale subpart, with level one representing the lowest development level and level six representing the highest. *Id.*

6

The DOT assigns the job of document preparer a Reasoning Development level of three. DOT § 249.587-018, 1991 WL 672349. This means the job requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* As Plaintiff correctly notes, the Tenth Circuit has recognized an apparent conflict between jobs requiring level-three reasoning and an RFC limitation to "simple and routine work tasks." *Hackett*, 395 F.3d at 1176 (stating that an RFC limitation to simple and routine work tasks "seems inconsistent with the demands of level-three reasoning," and reversing and remanding to allow the ALJ to address this "apparent conflict").

The Commissioner does not argue that there is a meaningful difference between "simple and routine work tasks" and the "simple tasks" limitation set forth here.[4] Instead, she asks the Court to look at Plaintiff's past relevant work (work the ALJ found Plaintiff could no longer perform) and make its own finding that Plaintiff could, in fact, perform a job with a reasoning level of three (despite Plaintiff's RFC limitation to "simple tasks"). (*See* ECF No. 13 at 9-10.) The Court will not supply such a critical finding in the first instance, particularly where it potentially requires (as noted below) the expert testimony of a VE. The Court, therefore, is left with an unresolved apparent conflict between the RFC and the document preparer job.

Once it appears there is a conflict between the VE's testimony and the DOT, the ALJ must resolve that conflict in a reasoned manner—and not with a generalized

---

[4] The Tenth Circuit has found a limitation to "simple instructions" similarly requires an explanation for the apparent conflict with level-three reasoning. *See Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016). Unpublished decisions are not precedential, but they may be cited for their persuasive value. 10th Cir. R. 32.1(A).

7

affirmation that there are "no conflicts." Rather, the ALJ "must explain the resolution of the conflict irrespective of how the conflict was identified." SSR 00-4p, at *4; *see also Haddock*, 196 F.3d at 1090 ("To allow an ALJ to elicit and rely on summary conclusions given by a VE, in the absence of contrary testimony elicited by the claimant through cross-examination, would amount to shifting the burden to produce and develop vocational evidence back to the claimant."). Or, as the Social Security Administration's ruling states,

> In these situations, the adjudicator will:
>
> Ask the VE . . . if the evidence . . . she has provided conflicts with information provided in the DOT;
>
> <u>and</u>
>
> If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, at *4 (emphasis added).

Here, the ALJ addressed the first question, but he did not proceed to step two to obtain a reasonable explanation regarding any apparent conflict. At the hearing, the ALJ asked how the representative jobs—including the job of document preparer—were consistent with the overall mental limitations in the RFC. (R. 49.) In response, the VE discussed only the jobs' Specific Vocational Preparation ("SVP") level[5] and interpersonal contact requirements. (*Id.*) She did not raise, herself, the apparent conflict with the GED reasoning level, and the ALJ did not inquire about it. As such, because the ALJ was required to, but did not, elicit additional testimony from the VE explaining how

---

[5] References to "unskilled" work speak to the job's Specific Vocational Preparation level, SSR 00-4p, at *3 ("unskilled work corresponds to an SVP of 1-2"), not its reasoning level under the GED. "Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *See* DOT, App. C, 1991 WL 688702 (4th ed. 1991). Meanwhile, "General Educational Development embraces those aspects of education . . . which are required of the worker for satisfactory job performance." *Id.*

Plaintiff can perform level-three reasoning with an RFC limitation to simple tasks, he erred in determining Plaintiff could perform the job of document preparer. Or, as the Tenth Circuit has explained,

> Though the ALJ asked the VE whether his testimony was consistent with the DOT, it clearly was not . . . . Thus, there is a conflict between the VE's testimony and the job descriptions in the DOT . . . . The ALJ failed to have the VE reconcile this conflict and therefore committed reversible error. On remand, to comply with *Haddock*, the Commissioner will need to elicit a reasonable explanation as to how Mr. Paulek can perform level-three-reasoning jobs with a limitation to carrying out simple instructions . . . ."

*Paulek*, 662 F. App'x at 594. The ALJ's step-five determination as to the document preparer job was not supported by substantial evidence.

### B. Sufficient Number of Jobs in the National Economy

Having found an unresolved apparent conflict between the RFC and one, but not all, of the jobs identified by the VE, the Court must now examine whether the ALJ's step-five error was harmless. The Commissioner contends that it was, because 27,000 jobs remain nationally. (ECF No. 13 at 10-13.) The Court disagrees.

Under the Act, work exists in significant numbers in the national economy when it exists in such numbers either in the region where the claimant lives or in several other regions of the country. 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.966(a). Determining what constitutes a significant number of jobs is normally a question of fact for the ALJ to decide based on "common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). Here, the ALJ did not find that the 27,000 remaining jobs existed in significant numbers in the national economy. Instead, the ALJ found that, overall, there were sufficient jobs, citing occupations with a combined total of 46,000 jobs. (R. 25-26.)

A reviewing court may supply a missing dispositive finding of fact under the rubric of harmless error where "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145. However, this Court must be cautious in "deciding in the first instance that a particular number was significant under the circumstances," because it must "avoid usurping the administrative tribunal's responsibility to find the facts" and must not violate "the general rule against post hoc justification of administrative action . . . ." *Id.* at 1144-45.

As the Commissioner notes, the Tenth Circuit has held that an ALJ's erroneous inclusion of conflicting jobs at step five is harmless error where the remaining nonconflicting jobs exist in sufficiently significant numbers in the national economy. *See, e.g., Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) (finding 1.34 million remaining jobs in the national economy significant). The Commissioner claims that both the Tenth Circuit—in unpublished opinions—and "a number of district courts in this circuit[,] have . . . upheld cases where the job numbers were similar to or even lower than the number here, even in the context of a harmless error analysis." (ECF No. 13 at 11-12 n.7 (citing *Raymond*, *Rogers v. Astrue*, 312 F. App'x 138 (10th Cir. 2009) (unpublished), and *Evans v. Colvin*, 640 F. App'x 731, 734 (10th Cir. 2016) (unpublished), along with numerous district court and non-Tenth Circuit opinions).)

Because the majority of cases cited by the Commissioner based their findings on *Rogers* (ECF No. 13 at 11-12 n.7), the Court will start there. *Rogers* was an unpublished Tenth Circuit case that "implicitly found that 11,000 jobs was a significant number" in the national economy. (*Id.* at 12 n.7.) However, while the court in *Rogers* might have implied that such a number was significant, the issue of whether that number of jobs was significant or not was never raised or discussed. *Rogers*, 312 F. App'x at 142. This Court declines to rely on such a vague implication, especially in light of *Norris v. Barnhart*,

10

where the Tenth Circuit explicitly faced this issue and declined to find, as a matter of law, that two remaining positions—one with 65,000-85,000 jobs and one with 125,000 jobs—existed in significant numbers in the national economy. 197 F. App'x 771, 777 (10th Cir. 2006) (unpublished) ("Given the fairly small number of those two jobs, it may be necessary for the ALJ to give consideration to the factors that should direct an ALJ's resolution of the significant number inquiry.").[6]

For these reasons, the Court also does not find the district court cases the Commissioner cites persuasive, as they primarily based their harmless error findings on an interpretation of *Rogers* the undersigned does not adopt.[7] Nor are the cases the Commissioner cites from outside the circuit helpful, as they do not address the matter of significant numbers in the harmless error context.[8]

Here, the Commissioner asks the Court to substitute its judgment for that of an ALJ who never made a significant-numbers finding regarding the jobs of touch-up

---

[6] The Commissioner also briefly refers to *Evans* as supportive of her position. (ECF No. 13 at 12 n.7.) *Evans*, however, was an attorney-fee case and did not involve affirming a commissioner's decision on the merits. 640 F. App'x at 733. The Commissioner cites *Evans* for the proposition that *Rogers* "implied that 11,000 national jobs was a significant number." (ECF No. 13 at 12 n.7.) This statement does, in fact, appear in *Evans*. 640 F. App'x at 735. But that court went on to note that the district court found *Rogers* unpersuasive in the case before it because the *Rogers* figure was stated in dictum and did not involve a finding of harmless error. *Evans*, 640 F. App'x at 736. The Tenth Circuit did not dispute the district court's interpretation of *Rogers*. *Id*. As explained by its discussion above, this Court agrees.

[7] *See Padilla v. Berryhill*, No. 16-106-KK, 2017 WL 3412089, at *12 (D.N.M. Mar. 28, 2017); *Jones v. Colvin*, No. CIV-14-170-RAW-KEW, 2015 WL 5573074, at *3 (E.D. Okla. Sept. 22, 2015); *Fox v. Colvin*, No. CIV-14-489-R, 2015 WL 5178414, at *4 (W.D. Okla. Sept. 3, 2015); *Johnson v. Colvin*, No. 13-CV-1455-WJM, 2014 WL 3809106, at *6 (D. Colo. Aug. 1, 2014); *Samuels-Boswell v. Saul*, No. CIV-18-121-SPS, 2020 WL 1700326, at *6 (E.D. Okla. April 8, 2020).

[8] They instead involve instances where <u>the ALJ</u> made a finding of numerical significance. *See Young v. Astrue*, 519 F. App'x 769, 772 (3d Cir. 2013) (unpublished); *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997).

screener and semi-conductor bonder. Affirming the decision would require the undersigned to supply the determination that 27,000 jobs constitutes a significant number of jobs in the national economy. So far, 152,000 is "the lowest number of jobs" the Tenth Circuit has considered to be sufficient for application of harmless error. *See Evans*, 640 F. App'x at 736.[9] Given the Tenth Circuit's preference that the ALJ evaluate numerical significance in the first instance and that the district court supply a dispositive finding only in exceptional circumstances, the undersigned declines to apply the harmless error standard and conclude that 27,000 jobs in the national economy is a significant number as a matter of law, such that "no reasonable administrative factfinder. . . could have resolved the factual matter in any other way."[10] *Allen*, 357 F.3d at 1145; *see also Terry T. v. Saul*, No. 19-CV-0684-CVE-CDL, 2021 WL 981284, at *5 (N.D. Okla. Mar. 16, 2021) (declining to find 108,000 jobs significant as a matter of law); *Michele E. v. Saul*, No. 19-CV-247-JFJ, 2020 WL 5701763, at *5 (N.D. Okla. Sept. 24, 2020) (same, 50,000 jobs); *Michael A. N. v. Saul*, No. 18-CV-600-FHM, 2020 WL 417777, at *3 (N.D. Okla. Jan. 27, 2020) (same, 83,000 jobs); *Brillhart v. Colvin*, No. CIV.A. 14-1387-JWL, 2015 WL 7017439, at *5-6 (D. Kan. Nov. 10, 2015) (same, 39,000 jobs); *Roybal v. Berryhill*, No. CV 17-1045 JHR, 2019 WL 318387, at *7 (D.N.M. Jan. 24, 2019) (same, 42,724 jobs); *Lori B. v. Saul*, No. 2:20-CV-00044-JCB, 2021 WL 1063314, at *6 (D. Utah Mar. 19, 2021) (same, approximately 25,000 jobs). Consequently, the ALJ's error at step five was not harmless.

---

[9] This further supports the Court's decision not to rely on any "implications" from *Rogers*.

[10] For these same reasons, the undersigned is also not persuaded by the Commissioner's efficiency arguments. (ECF No. 13 at 12-13 (noting the backlog of pending social security claims).) While it may be true that remanding on these grounds will prolong final resolution of the matter—as is true in *all* remanded cases—this does not give the Court the power to make fact-finding decisions that the Tenth Circuit has indicated should be left to the ALJ. The undersigned declines to overstep its authority in the name of efficiency.

## VI.   Conclusion

For the foregoing reasons, the ALJ's decision finding Plaintiff not disabled is **REVERSED and REMANDED** for proceedings consistent with this Opinion and Order.

**SO ORDERED** this 29th day of March, 2023.

_____
SUSAN E. HUNTSMAN, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT